United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**GAIL PAYNE, ET AL.,**

Plaintiffs,

v.

**OFFICE OF THE COMMISSIONER OF BASEBALL, ET AL.,**

Defendants.

Case No. 15-cv-03229-YGR

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Re: Dkt. No. 52

In their First Amended Complaint (Dkt. No. 41 ("FAC")), plaintiffs Gail Payne, Robert Gorman, and Stephanie Smith assert claims for negligence, fraudulent concealment, and various statutory violations against the Office of the Commissioner of Baseball d/b/a Major League Baseball ("MLB"),[1] its acting Commissioner Robert D. Manfred, Jr., and all thirty MLB teams (the "Clubs").[2] Plaintiffs primarily seek injunctive relief requiring increased safety netting at all MLB ballparks, spanning "from foul pole to foul pole." (FAC ¶ 332.)

Defendants now move to dismiss the case, asserting plaintiffs lack standing, challenging the Court's personal jurisdiction over the Out-of-State Clubs, arguing venue is not proper in this

[1] MLB purportedly has the power to act for and bind the Clubs. (*Id.* ¶ 29.)

[2] Defendants note that the FAC names the incorrect legal entity for certain Clubs, errors which presumably may be corrected in any subsequent amendment to the complaint. For purposes of this motion, the Court distinguishes between the two Clubs located within this District (the San Francisco Giants and the Oakland Athletics, collectively the "Northern California Clubs"), those located outside of the District but within the State of California (the San Diego Padres, Los Angeles Dodgers, and Los Angeles Angels of Anaheim, collectively the "Southern California Clubs"), and the remaining clubs (the "Out-of-State Clubs," one of which, the Toronto Blue Jays, is located outside of the country).

United States District Court
Northern District of California

District as to certain defendants, and asserting plaintiffs fail to state a claim. (Dkt. No. 52.)[3]

The Court heard oral argument on March 22, 2016. Thereafter, the Court ordered, and the parties filed, supplemental briefs addressing whether limited jurisdictional discovery on the issue of standing is warranted. (Dkt. Nos. 63, 67-68.) Having carefully considered the papers submitted,[4] the record in this case, and the arguments of counsel, and good cause shown, the motion is **GRANTED IN PART** insofar as it seeks dismissal of claims asserted against the Out-of-State Clubs for lack of personal jurisdiction. The Court orders limited jurisdictional discovery on the issue of standing as noted below and defers ruling on the remainder of the motion.

## I. BACKGROUND

Plaintiffs are three individuals—Payne, Gorman, and Smith—who have previously attended baseball games, "one of the greatest pastimes in the history of American sport." (FAC ¶¶ 3, 17, 20-21, 24.)[5] They allege defendants "have failed to adequately protect spectators through their failure to enact and enforce adequate safety measures." (*Id.* ¶ 9.)

According to plaintiffs, the risk of broken bats has increased in baseball's modern era as a result of the switch from ash to maple bats, which tend to "explode" upon shattering, sending "multiple shrapnel-like pieces in indiscriminate directions." (*Id.* ¶ 93.) Plaintiffs claim the "power game of baseball has created a modern-day slaughter pen." (*Id.* ¶ 96.) The complaint is replete with graphic descriptions and photographs of seriously injured participants or spectators,

---

[3] Defendant Tortonto Blue Jays, not served until after this motion was filed, subsequently joined in the motion. (Dkt. No. 58.)

[4] While not styled as a request for judicial notice, defendants present five documents which are incorporated by reference to the FAC—webpages cited in the FAC, ticket-back liability waivers referenced in the FAC, and a letter referenced in the FAC. (Dkt. No. 52-1.) Plaintiffs request judicial notice, pursuant to Federal Rule of Evidence 201, of U.S. Patent and Trademark Office public records regarding a MLB trademark and a MLB press release. (Dkt. No. 54.) While the Court is not convinced the request for judicial notice of the press release is appropriate, the Court nevertheless **GRANTS** each side's unopposed requests solely for purposes of evaluating this motion, recognizing the existence and contents of the documents in question but not necessarily the truth of the matters asserted therein. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("[A] court may take judicial notice of 'matters of public record.'").

[5] The nonconclusory and uncontroverted factual allegations in the complaint are generally accepted as true for purposes of considering this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

who were hit with balls or splintered bats, over the prior decades. (*Id.* ¶¶ 95-244.) Four of these injuries—in 1943, 1960, 1970, and 2010—resulted in death, including the deaths of two children. (*Id.* ¶¶ 97-101.) Certain players and commentators "have begun to question MLB's inaction and demand increased protection for fans." (*Id.* ¶ 5.) For instance, Justin Verlander with the Detroit Tigers released a statement that "[m]ore protective measures need to be put in place in all ball parks" because "[p]layers are sick of seeing injuries that could easily be avoided!" (*Id.*)

Plaintiff Payne, who lives in Oakland, California, has been an Oakland A's fan for nearly fifty years and "loves" attending games. (*Id.* ¶ 17.) She purchased season tickets for the first time in 2015. (*Id.*) She "believes" her seats, in section 211, were less expensive than seats in sections protected by netting. (*Id.*) Her plaza infield seats are on the second level. (*Id.* ¶ 18.) Apparently the sections in front of hers, on the first level, are "some of the areas that receive the most foul balls." (*Id.*) Payne "estimates that at every game, at least three or four balls enter her section." (*Id.* ¶ 17.) As a result, "she is constantly ducking and weaving to avoid getting hit by foul balls or shattered bats." (*Id.*) She once "ducked to avoid a foul ball flying her way," but "there is no guarantee she can duck the next time." (*Id.*) She believes fans are "at increased and imminent risk of injury due to distractions" in the Oakland Coliseum, including a "giant screen" and fan participation contests calling for the use of mobile devices. (*Id.*)

Plaintiff Gorman lives in South Carolina. (*Id.* ¶ 19.) Gorman, a university professor, has co-authored a book on fatalities in baseball. (*Id.* ¶ 23.) A baseball fan since the age of seven, he purchased 2015 season tickets for the Charlotte Knights, a minor league team, in section 114. (*Id.* ¶ 19.) The seats were not protected by netting. (*Id.*) He was hit in the head by a foul ball at the team's previous ballpark about fifteen years ago. (*Id.* ¶ 21.) The ball nearly shattered his glasses. (*Id.* ¶ 21.) His wife was once hit by a foul ball outside a college baseball stadium. (*Id.*) He has also witnessed "numerous foul ball injuries" at the Knights' ballpark, including several this season. (*Id.* ¶ 20.) During the 2015 season, he saw a woman sitting ten rows in front of him get hit by a foul ball on her left collarbone. (*Id.*) Gorman alleges that "if the ball had hit her just slightly differently, she would have been killed." (*Id.*) In 2015 he also witnessed a woman hit in the head by a "pop fly," a woman hit in the arm, a bat "fly into the stands near first base," a pitch

hit an empty chair, and a foul ball hit a food kiosk on the nearby concourse. (*Id.*) Finally, on August 26, 2015, a friend sitting next to him "almost had his head taken off" by a line drive. (*Id.*) The friend was apparently able to react in time. (*Id.*)

Plaintiff Smith, a resident of King County, Washington, currently lives in California. (*Id.* ¶ 24.) On June 7, 2015, while attending a Los Angeles Dodgers game with her family, she was hit in the stomach by a line drive foul ball. (*Id.*) Even though she had seen the ball coming at her, she was unable to avoid getting hit. (*Id.*) The impact partially collapsed her lung and may have broken her ribs. (*Id.*) She incurred about $4,300 in medical expenses as a result. (*Id.*) The Dodgers denied liability. (*Id.*)

Over time, netting technology has improved from hemp woven screens to screens comprised of thin, lightweight polymers. (*Id.* ¶ 63.) The new nets are "virtually invisible" except for the seams connecting each large section. (*Id.*) There is no MLB standard for netting. (*Id.* ¶ 71.) Most Clubs leave the areas between the dugouts and the foul poles fully exposed, while some end the netting at first and third base. (*Id.* ¶ 64.) The Dodgers' stadium netting, for instance, is "relatively minimal." (*Id.* ¶ 69.) The "length and extent of netting" at ballparks has purportedly failed to keep up with "the evolving pace and power of the game." (*Id.* ¶ 64.) For instance, use of a pitch clock has increased the pace of play, which is expected to be further increased as a result of 2015 rule changes. (*Id.* ¶ 79.) Pitchers throw harder than ever. (*Id.* ¶ 82.) Foul balls can travel at more than 100 miles per hour and will often reach fans before they have time to react. (*Id.* ¶¶ 82-83.) Moreover, stadiums now feature a number of distractions (including "enormous jumbotron screens," Wi-Fi, seatback displays, hot dog cannons, and crowd activities such as "waves"), which decrease fans' awareness and, in turn, their ability to avoid incoming projectiles. (*Id.* ¶¶ 78, 281.) Plaintiffs suggest the public is largely unaware of these risks, although the FAC cites to hundreds of publications regarding the same. (*Id.* ¶¶ 96-244, 246.)

Some ticketing sites, including MLB's official site, fail to specify whether a given seat is protected by netting. (*Id.* ¶ 73.) However, the tickets contain language "advising the ticket holder that he/she assumes all risks and danger." (*Id.* ¶ 351 n.521.) For instance, Dodgers tickets contain a section entitled "WARNING—ASSUMPTION OF RISK" which includes the following



United States District Court
Northern District of California

language:

> By using this ticket and entering Dodger Stadium, the holder assumes all risks and danger incidental to the game of baseball, whether such risks occur prior to, during, or subsequent to the playing of the game, including specifically (but not exclusively) the danger of being injured by thrown bats and thrown or batted balls.

(Dkt. No. 52-4.) Certain protected seats—namely, those located right behind home plate—are more expensive than some unprotected seats. (*Id.* ¶ 74.) At a typical game, about 35 to 40 balls fly into the stands. (*Id.* ¶ 81.)

Plaintiffs assert six claims: (1) negligence; (2) fraudulent concealment; (3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); (4) violation of California Civil Code §§ 1750, *et seq.* ("CLRA"); (5) violation of California Civil Code § 1668; and (6) personal injury. Count 1 is premised upon defendants' purported failure to provide sufficient netting, failure to disclose the high risk of injury in certain unprotected seats, misrepresentation of ballparks as "safe and family friendly," and introduction of "unnecessary distractions," among other allegations. (FAC ¶ 328.) Counts 2-4 are premised upon defendants' purported concealment of facts regarding the risks in question and representation of ballparks as safe. (*Id.* ¶¶ 335-36, 340, 351.) Count 5 claims the waivers included on the back of tickets to MLB games are void as against public policy. (*Id.* ¶ 354.) Count VI is apparently a negligence claim brought solely by plaintiff Smith regarding the personal injury she suffered on June 7, 2015, when hit by a ball at Dodgers stadium. (*Id.* ¶ 355.)

Among other relief sought,[6] plaintiffs seek injunctions requiring all existing and future major and minor league ballparks to feature protective netting "from foul pole to foul pole." (*Id.* ¶ 332.) Plaintiffs estimate extended netting would only cost approximately $10,000 per stadium. (*Id.* ¶ 71.) Plaintiffs also request the establishment of "a program to study injuries and the rates of injuries amongst spectators, including the type and manner of injury and at what locations in ballparks they occur, in an effort to continually reevaluate whether additional steps should be

---

[6] Plaintiff Smith seeks damages for her prior injury and plaintiffs request prejudgment interest, costs, attorneys' fees, and "such other and further relief as the Court deems just and proper." (FAC at 118.)

United States District Court
Northern District of California

taken, so that precautionary measures can continue to evolve as the sport continues to evolve." (*Id.* ¶ 332.)

## II. DISCUSSION

Defendants move to dismiss on the following grounds: (1) lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1); (2) lack of personal jurisdiction over Out-of-State Clubs pursuant to Rule 12(b)(2); (3) improper venue as to Southern California and Out-of-District Clubs[7] pursuant to 28 U.S.C. § 1391; and (4) failure to state a claim under Rule 12(b)(6). Although there is no mandatory "sequencing of jurisdictional issues," jurisdictional questions ordinarily must precede merits determinations in dispositional order. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999)). Thus, the Court resolves solely the aspect of the motion directed to personal jurisdiction over the Out-of-State Clubs at this juncture. The Court orders limited jurisdictional discovery and supplemental briefing relating to the standing challenge as to the remaining defendants and defers ruling on that and other remaining issues pending said briefing.

### A. Personal Jurisdiction

The Out-of-State Clubs argue plaintiffs have failed to establish this Court has personal jurisdiction over them and move to dismiss all claims asserted against them on that basis pursuant to Federal Rule of Civil Procedure 12(b)(2).

#### 1. Legal Standard

A motion under Federal Rule of Civil Procedure 12(b)(2) challenges a court's exercise of personal jurisdiction over a defendant. Where no federal statute governs personal jurisdiction, the Court applies the law of the state in which it sits; here, California law applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). California law allows for the exercise of "jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States." Cal. Civ. Proc. Code § 410.10. Due process requires that the non-resident defendant have

[7] MLB and the Commissioner similarly seek to dismiss all claims against them based on "events or omissions" that took place outside of this District.

"minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Personal jurisdiction may be either general or specific. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

General jurisdiction allows a court to assert jurisdiction over out of state corporations "to hear any and all claims against them" and attaches to a defendant only if its "affiliations with the State are so continuous and systemic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, -- U.S. --, 134 S.Ct. 746, 749 (2014) (internal quotations and alterations omitted); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, -- U.S. --, 131 S.Ct. 2846, 2851 (2011). It would be the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 134 S.Ct. at 761, n.19.

By contrast, specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 131 S.Ct. at 2851 (internal quotations omitted and alteration in original). Said otherwise, personal jurisdiction requires the Court to evaluate whether the specific activity giving rise to the plaintiff's causes of action is sufficiently related to the forum state. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952); *Hanson v. Denckla*, 357 U.S. 235, 250-53 (1958). The Ninth Circuit applies a three-prong test to determine whether a non-resident defendant's activities are sufficiently related to the forum state to establish specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden of demonstrating the first two prongs. *See id.*; *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). If the plaintiff fails to satisfy either of these prongs, then personal jurisdiction is not established in the forum state. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). If the plaintiff carries this burden, then "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto*, 539 F.3d at 1016 (citing *Schwarzenegger*, 374 F.3d at 802).

Where, as here, the motion to dismiss is based on written submissions—rather than an evidentiary hearing—the plaintiff need only make a *prima facie* showing of jurisdiction. *See Schwarzenneger*, 374 F.3d at 800. "Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1289 n.8 (9th Cir. 1977)). A plaintiff makes a "*prima facie*" showing by demonstrating facts which, if true, would be sufficient to establish the existence of personal jurisdiction. *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In deciding whether such a showing has been made, a district court must accept as true the uncontroverted allegations in the complaint and conflicts between facts contained in the parties' affidavits must be resolved in a plaintiff's favor. *See AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

**2. Analysis**

Plaintiffs allege jurisdiction is proper over the Out-of-State Clubs because they:

> are authorized to do business and in fact do business in this district, including playing baseball in this district and have sufficient minimum contacts with this district, and otherwise intentionally avail themselves of the markets in this district through sponsorship and playing of games in this district, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

(FAC ¶ 14.)

Here, the Court finds that the alleged activities—merely playing games in the state against



United States District Court
Northern District of California

California-based teams—are not sufficient to subject the Out-of-State Clubs to general personal jurisdiction within California. *See Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1018-21 (N.D. Cal. 2015) (finding no general personal jurisdiction over certain Out-of-State Clubs despite their regular travel to California for games and scouting, the fact that they had certain employees based in the state, and the fact that they received some revenue from Internet and television broadcasts in the state). Plaintiffs attempt to distinguish the facts at issue here from *Senne* by pointing to the ticket-back liability waivers, arguing the Out-of-State Clubs have thereby entered into contractual agreements with California residents. To the extent this argument refers to spectators at California-based games, presumably tickets to those games are provided by the local team—although plaintiffs have provided no details on this point. If it instead refers to California residents attending out of state games, merely "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

As for specific personal jurisdiction, the purposeful availment prong is satisfied insofar as the Out-of-State Clubs occasionally play games in California. However, plaintiffs have failed to establish the second factor—that the claims at issue arise out of or relate to the defendant's forum-related activities. In order to satisfy that prong, a plaintiff must demonstrate that "but for" the defendant's forum-related conduct, the claims in question would not have arisen. *See Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001). Plaintiffs' claims (other than, perhaps, the claim relating to Smith's personal injury) would have arisen even if the California teams did not host any particular Out-of-State Club during the season. Indeed, plaintiffs' theory of liability apparently centers on each team's negligence in connection with its own stadium netting and distractions, and its failure to apprise the public of the risks inherent in attending games in its stadium. The negligence claim does not challenge the mere participation in the sport of baseball, but rather the stadium conditions and related conduct. Thus, as there is no specific allegation or evidence suggesting the out-of-state teams exert any significant measure of control over the conditions at local stadiums, the asserted claims do not appear sufficiently related to the Out-of-

State Clubs' California activities to subject them to specific personal jurisdiction within the state. *See Ballard*, 65 F.3d at 1498 (finding prior in-state business trips did not weigh in favor of the exercise of specific personal jurisdiction where the claims in question did not arise out of those trips).

As such, the Court finds that plaintiffs have failed to establish that personal jurisdiction over the Out-of-State Clubs is appropriate. Consequently, the claims against those clubs are **DISMISSED**. Since plaintiffs have failed to identify any additional facts that could subject those defendants to personal jurisdiction in California, leave to amend would be futile and the dismissal is **WITH PREJUDICE**. *See Foman v. Davis*, 371 U.S. 178,182 (1962); *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004).

**B. Jurisdictional Discovery: Standing**

Defendants next assert plaintiffs lack standing to assert their claims for injunctive relief. According to defendants, plaintiffs' risk of future injury is speculative and not sufficiently immediate to confer standing.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the subject matter jurisdiction of the Court. To establish Article III standing, a plaintiff must satisfy three elements: (1) "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) causation—"there must be a causal connection between the injury and the conduct complained of"; and (3) redressability—"it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks, citations, and footnote omitted).

The Supreme Court has ruled time and again that the "threatened injury must be *certainly impending* to constitute injury in fact," and that "[a]llegations of *possible* future injury" are insufficient to confer Article III standing. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (emphasis and alteration in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). The "substantial risk" of harm may also be sufficient to confer standing on a plaintiff. *See id.* at 1150 n.5.

United States District Court
Northern District of California

The Court previously ordered supplemental briefing addressing whether the Court should allow limited jurisdictional discovery. (Dkt. No. 63.) The Court contemplated narrowly tailored discovery addressing solely the issue of standing; in particular, the probability that a given individual, seated in plaintiffs' specific sections at the two California stadiums in question, will be hit by a stray ball or bat in the course of a given game or season. *See Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989); *Gordon v. City of Moreno Valley*, 687 F. Supp. 2d 930, 940 (C.D. Cal. 2009). While defendants rightly point out that matters alleged in the complaint or incorporated by reference therein suggest the level of risk to the average attendee is remote based on nationwide attendance figures and injury statistics, those facts do not reveal the risk of injury to the specific named plaintiffs—namely, the data fails to account for the number of games named plaintiffs will likely attend this season or the risk of injury in their specific sections of the two stadiums at issue. However, plaintiffs' proposed requests for production and interrogatories are substantially overbroad at this juncture.

Thus, the Court **ORDERS** defendants to provide plaintiffs with *limited* jurisdictional discovery directly relating to this issue, such as requests for production or interrogatories seeking information that can be directly used to calculate "the probability that a given individual, seated in plaintiffs' specific sections at the two California stadiums in question, will be hit by a stray ball or bat in the course of a given game or season." Defendants' request for reciprocal discovery is granted, and defendants may depose plaintiffs or otherwise seek limited discovery directly related to this issue. This discovery period shall close on **July 8, 2016**. Thereafter, the parties shall submit supplemental briefs of no more than seven (7) pages per side addressing the issue of standing in light of any evidence produced through said discovery. Plaintiffs' supplemental brief is due by **July 19, 2016**. Defendants' reply is due by **August 2, 2016**. The Court **SETS** a further hearing on the motion to address this issue on **August 23, 2016** at **2 p.m.**

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** defendants' motion, as follows: the motion to dismiss all claims against the Out-of-State Clubs for lack of personal jurisdiction is **GRANTED** and such claims are **DISMISSED WITH PREJUDICE**. The Court defers ruling on the

remainder of the motion pending the contemplated jurisdictional discovery on standing and briefing thereon.

**IT IS SO ORDERED.**

Dated: April 8, 2016

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California