UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GAIL PAYNE, ET AL.,**<br>　　　　Plaintiffs,<br>　　v.<br>**OFFICE OF THE COMMISSIONER OF BASEBALL, ET AL.,**<br>　　　　Defendants. | Case No. 15-cv-03229-YGR<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br>Re: Dkt. Nos. 52, 85, 89, 98 |

This action involves a request for injunctive relief requiring increased safety netting and other safety measures at all Major League Baseball ballparks, as well as an individual personal injury claim. Plaintiffs Gail Payne and Stephanie Smith[1] assert claims for negligence, fraudulent concealment, and various statutory violations against the Office of the Commissioner of Baseball d/b/a Major League Baseball ("MLB"), its acting Commissioner Robert D. Manfred, Jr., and all thirty MLB teams (the "Clubs"). (Dkt. No. 41, "FAC.")

On April 8, 2016, the Court granted in part defendants' motion to dismiss (Dkt. No. 52) against the non-California-based Clubs for lack of personal jurisdiction, but deferred its ruling on the remainder of the motion to allow for limited jurisdictional discovery and supplemental briefing related to the issue of standing raised therin. (Dkt. No. 69 "April 8 Order.") Specifically, the Court allowed discovery related to the "the probability that a given individual, seated in plaintiffs' specific sections at the two California stadiums in question, [would] be hit by a stray ball or bat in the course of a given game or season." (*Id.* at 11.) The Court heard oral argument again on August 23, 2016.

---

[1] The First Amended Complaint also included Robert Gorman as a plaintiff, but plaintiffs have since removed him as a named plaintiff.

1    Having carefully considered the papers submitted, the record in this case, and the
2    arguments of counsel, and for good cause shown, the motion is **GRANTED**.[2]

**I.  BACKGROUND**

The Court incorporates the background from the April 8 Order and supplements it as follows. Plaintiffs assert six claims: (1) negligence; (2) fraudulent concealment; (3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); (4) violation of California Civil Code §§ 1750, *et seq.* ("CLRA"); (5) violation of California Civil Code § 1668; and (6) personal injury. For Counts 1 through 5, plaintiffs seek injunctive relief on behalf of the class. Count 6 is plaintiff Smith's personal and individual claim for damages based on negligence, arising from the personal injury that she suffered on June 7, 2015, when hit by a ball at Dodgers Stadium. (FAC ¶ 355.)

**A.  Relevant Facts**

*1.  Plaintiff Gail Payne*

Regarding plaintiff Payne, defendants have produced statistics showing that during the 2014-partial 2016 seasons at the Oakland Coliseum, out of 36,766 total tickets issued in sections 211 and 215, only one injury was reported in those sections, an injury rate of approximately 0.0027%. (Defendants' Supplemental Reply Brief on Standing ("Defendants' Supplemental Reply"), Dkt. No. 90, at 2; Dkt. 91 ("Gorman Decl.") ¶ 9 and Exs. 7-10.) The probability of being hit by a bat or bat fragment was lower, as no such incidents have been reported in the past five seasons. (Gorman Decl. ¶ 10.)

Plaintiffs take issue with the data that defendants have produced, arguing that it is incomplete because the injury reports are under-inclusive in that they do not capture all the foul balls. The Court recognizes that the data likely has limitations (*e.g.*, only reported injuries are included), but cannot ignore its relevance for purposes of standing. Further, plaintiffs offer no alternative theory for addressing the alleged lack of data with respect to the Oakland Coliseum.

---

[2] Plaintiffs' administrative motion to file documents under seal (Dkt. No. 85), defendants' administrative motion to file documents under seal (Dkt. No. 89), and the parties' stipulation to file supplemental material in connection with this motion are **GRANTED**. (Dkt. No. 98.)

2

1   For their part, plaintiffs contend that "there is no viable method of calculating the risk of being
2   struck by a baseball bat in the two stadiums at issue." (Plaintiffs' Supplemental Briefing on
3   Standing, Dkt. No. 86, at 6.)
4         Plaintiff Payne alleges that she experiences fear as a result of the lack of netting at these
5   stadiums. She testified that she "fears for [her] safety" and "feels like [she's] in imminent danger
6   of being hit by a ball" when attending games at the Oakland Coliseum sitting in certain sections of
7   the stadium that are unprotected by netting (*i.e.*, sections 211 and 215) because foul balls
8   sometimes enter those sections. (Declaration of Jerrod C. Patterson, Dkt. No. 87 ("Patterson
9   Decl.), Ex. A ("Payne Depo.") at 41:24-42:4, 46:13-25, 53:17-21.) Nevertheless, she keeps
10  attending the games and sitting in those sections because she "like[s] the view from [her] seat."
11  (*Id.* at 42:5-11.) She testified that if nets were extended at Oakland Coliseum, she "would enjoy it
12  a lot because [she spends] time ducking and dodging balls that come into [her section] at every
13  game." (*Id.* at 50:5-11.) Payne recounted an instance when she might have been hit by a foul ball
14  that came into her section if she had not ducked out of its way. (*Id.* at 50:13-19.) Notwithstanding
15  her experience, Payne has never been injured at an A's game at the Oakland Coliseum. (Gorman
16  Decl., Ex. 1 ("Payne Depo.") at 41:15-23.) She plans to attend future games at the Coliseum, but
17  cannot say on which dates and has not purchased any tickets yet. (Payne Depo. at 37:20-22,
18  45:20-25.)
19        *2.   Plaintiff Stephanie Smith*
20        Regarding plaintiff Smith, defendants have produced data showing that, in Field Box 35,
21  where she attended games at the Los Angeles Dodgers stadium, the probability of being hit by a
22  foul ball is 0.018%. (Gorman Decl. ¶ 12 and Exs. 12-15; Defendants' Supplemental Reply at 4.)
23  Of the 27,181 attendees in that box over the 2014-partial 2016 seasons, there were 5 "incidents."
24  "Incidents" reported include both injuries and other events for which a security officer was
25  dispatched. (*Id.*)
26        Plaintiffs, on the other hand, point to evidence that during the 2015 season at Dodgers
27  Stadium, 153 fans were struck by baseballs and offered medical treatment. There were 83 home
28  games that year, and therefore an average of almost two individuals were hurt by foul balls at each

United States District Court
Northern District of California

1   game. (Patterson Decl., Ex. N; Plaintiffs' Supplemental Briefing on Standing at 6.)

2   Plaintiff Smith also testified that she is afraid of attending baseball games, but her fear is
3   grounded in a serious injury she sustained while attending a Dodgers game in June 2015. She has
4   not attended any games in California since that time, turning down invitations due to her fear.
5   (Patterson Decl., Ex. G ("Smith Depo.") at 25:14-26:2; 29:16-30:8; 35:10-21 and Ex. 3.) She does
6   not intend to attend any future games. However, she would consider attending future games if
7   netting were expanded. (*Id.* at 56:3-24.)

### 3.  *Evidence of Severe Injuries*

In addition to the injuries that Smith suffered, plaintiffs have provided evidence of severe injuries that other baseball spectators have sustained. For example, the FAC alleges that, as a result of being hit by a foul ball at Boston's Fenway Park in 1998, one woman "required surgery to place eight facial plates into her face, has constant and severe pain in her jaws, eyes, and temples and is permanently injured and will require comprehensive medical therapy for the rest of her life." (FAC ¶ 103.) In July 2008, a "seven-year-old suffered a fractured skull and swelling around the brain after being hit with a baseball at Wrigley Field." (*Id.* ¶ 109.) In 2009, a four-year-old boy who was hit by a foul ball fell into a coma, sustained injuries to his cerebellum and brain stem, and took three months to speak again. (*Id.* ¶ 113.) More recently, in August 2015, an article described how Philadelphia Phillies shortstop Freddy Galvis called for MLB to expand foul ball netting after he accidentally hit a young girl in the face with a foul ball, an injury which sent the girl to the hospital.

Taking these allegations as true, as the district court is required to do at this stage, the Court finds that, while rare, the severity of injuries that baseball spectators sustain in the modern era as a result of foul balls is significantly more severe than in the past. (*See id.* ¶¶ 96-244.) The change is of concern, especially given its impact on children.[3]

---

[3] Why Major League Baseball, knowing of the risk to children in particular, does little to highlight this risk to parents remains a mystery.

4

**II.    STANDING**

The Court first examines the threshold issue of standing for Counts 1-5 as follows.

**A.  Applicable Standard**

*1.  Legal Framework*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the subject matter jurisdiction of the Court. A challenge to subject matter jurisdiction "can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). In a facial attack, the defendant challenges the sufficiency of the allegations of subject matter jurisdiction in the complaint. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1990). Review is akin to that for a Rule 12(b)(6) motion, *i.e.*, all allegations of the complaint are taken as true and all reasonable inferences are drawn in favor of the plaintiff. *Id.*

*2.  Law Regarding Standing*

To establish Article III standing, a plaintiff must satisfy three elements: (1) "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical"; (2) causation—"a causal connection between the injury and the conduct complained of"; and (3) redressability—"it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted). In the class action context, the named plaintiff must show that she personally has suffered an injury, not just that other members of the putative class suffered the injury. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." (citation omitted)).

In terms of the injury requirement, the Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that '[a]llegations

1    of *possible* future injury' are not sufficient" to confer Article III standing.  *Clapper v. Amnesty*

2    *Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (emphasis and alteration in original) (quoting *Whitmore v.*

3    *Arkansas*, 495 U.S. 149, 158 (1990)).  The "substantial risk" of harm may also be sufficient to

4    confer standing on a plaintiff.  *See Clapper*, 133 S. Ct. at 1150 n.5.  "[S]peculation or subjective

5    apprehension about future harm" do not support standing.  *Mayfield v. United States*, 599 F.3d

6    964, 970 (9th Cir. 2010) (citation and internal quotation marks omitted).

7          In *Clapper*, plaintiffs who sought an injunction against government surveillance under

8    Section 702 of the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. § 1881(a), could not

9    establish injury in fact because their argument rested on "their highly speculative fear" that the

10   government would successfully target their communications pursuant to the statute in question.

11   *Clapper*, 133 S. Ct. at 1148.  An earlier case similarly held that a plaintiff who was allegedly

12   placed in an illegal chokehold by a police officer had standing to pursue his claim arising out of

13   that incident but lacked standing to seek injunctive relief where no "real or immediate threat that

14   the plaintiff [would] be wronged again" could be articulated.  *See City of Los Angeles v. Lyons*,

15   461 U.S. 95, 108-11 (1983) ("[I]t is surely no more than speculation to assert either that [plaintiff]

16   himself will again be involved in one of those unfortunate instances, or that he will be arrested in

17   the future and provoke the use of a chokehold by resisting arrest, attempting to escape, or

18   threatening deadly force or serious bodily injury."); *cf. Libertarian Party of Los Angeles Cty. v.*

19   *Bowen*, 709 F.3d 867, 870 n.3 (9th Cir. 2013) (plaintiff had standing where its fear that a statute

20   challenged on constitutional grounds would be enforced was "actual and well-founded" and did

21   not involve a "highly attenuated chain of possibilities" (internal quotation marks and citation

22   omitted)).

23         **B. Analysis**

24         Defendants argue that plaintiffs lack standing to assert their claims for injunctive relief, as

25   their risk of future injury is speculative and not sufficiently immediate.  As the named plaintiffs in

26   a class action must show the requisite injury, the Court examines the facts regarding each of the

27   plaintiffs in turn.  *See Lierboe*, 350 F.3d at 1022.

### 1. *Plaintiff Gail Payne*

In bringing Counts 1-5, Payne seeks an injunction to relieve an injury that she might sustain in the future. However, she has never been injured at an A's game at the Oakland Coliseum. (Payne Depo. at 41:15-23.) She plans to attend future games at the Coliseum, but cannot say on which dates and has not purchased any tickets yet. (Payne Depo. at 37:20-22, 45:20-25.) Such uncertain plans are insufficient to establish injury in fact. *See Lujan v*, 504 U.S. at 564 (plaintiffs' intentions to return to a location at some unspecified later date, "without any description of concrete plans," was insufficient to establish an "actual or imminent" injury that might result from the future visit).

Assuming plaintiff Payne does attend future games, the next question involves the probability that she will be injured. Defendants' evidence shows that Payne's risk of being injured in future is approximately 0.0027%. (Defendants' Supplemental Reply at 2; Gorman Decl. ¶ 9 and Exs. 7-10.) Assuming that these statistics remain relatively constant, and the parties have provided no reason to the contrary, the likelihood that Payne will be injured by a foul ball or a bat while attending an A's game at the Oakland Coliseum does not meet the threshold of "certainly impending." *Clapper*, 133 S. Ct. at 1147; *see also Mehr v. Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1057 (N.D. Cal. 2015), *appeal dismissed* (Sept. 22, 2015) (plaintiff soccer players failed to allege adequately that they were in "imminent danger of injury" due to the risk of latent brain injuries arising from their participation in the sport). Plaintiffs offer no evidence to the contrary.[4]

Plaintiffs argue that Payne's fear of injury is sufficient to confer standing. However, "speculation or 'subjective apprehension' about future harm" does not support standing. *Mayfield*, 599 F.3d at 970 (citation omitted). Plaintiffs liken their allegations to those of plaintiffs in data privacy cases. For example, in *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010), a laptop containing employee names, addresses, and social security numbers was stolen from

---

[4] Plaintiffs assert that "there is no viable method of calculating the risk of being struck by a baseball bat in the two stadiums at issue." (Plaintiffs' Supplemental Briefing on Standing, Dkt No. 86, at 6.)

7

Starbucks. One of the employee plaintiffs had already experienced an incident of identity theft as a result. The court held that another employee who alleged that he had "spent and continue[d] to spend substantial amounts of time checking his 401(k) and bank accounts, ha[d] placed fraud alerts on his credit cards, and ha[d] generalized anxiety and stress regarding the situation" had Article III standing. *Krottner*, 628 F.3d at 1141 (internal quotation marks omitted); *see also Doe v. Chao*, 540 U.S. 614, 618, 624-25 (2004) (suggesting that a plaintiff who allegedly "was 'torn . . . all to pieces' and 'was greatly concerned and worried' because of the disclosure of his Social Security number and its potentially 'devastating' consequences" had no cause of action under the Privacy Act, but nonetheless had standing under Article III). *Krottner* is distinguishable because plaintiffs alleged a "credible threat of real and immediate harm stemming from the theft of a laptop containing their unencrypted personal data." *See Krottner*, 628 F.3d at 1143. Here, as defendants' data shows, there is no such credible or immediate threat that plaintiff Payne will be hit by a foul ball or a bat, only that if the rare event happened, the injury could be life-changing.

      Finally, plaintiffs' contention that her deprivation of her ability to enjoy the game confers an independent basis for standing also fails. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) (plaintiff environmental association had Article III standing in a Clean Water Act action where it was "undisputed" that defendant was illegally discharging pollutants into a river in excess of permit limits, the individual association member provided affidavits and testimony that the discharges "directly affected" their "recreational, aesthetic, and economic interests," and there was "nothing 'improbable'" about the proposition that the company's continuous and illegal discharges would cause such harms). By contrast, here, plaintiff Payne may continue to attend baseball games even with the knowledge of the risk. Unlike the environmental context, the alleged diminishment of her personal enjoyment of the games resulting from the lack of netting is addressable. For instance, Payne may choose to sit in a different section. As alleged, Payne does not show injury in fact.

      Thus, the Court concludes that plaintiff Payne does not have standing to bring her claims and dismisses Counts 1-5 with respect to Payne.

8

### 2. *Plaintiff Stephanie Smith*

Unlike Payne, plaintiff Smith was actually injured while attending an L.A. Dodgers game in Los Angeles on June 7, 2015. Nevertheless, the analysis with respect to standing for Counts 1-5 is similar.

First, plaintiff Smith has testified that she has no intention of attending another major league baseball game during the 2016 or 2017 seasons. (Gorman Decl., Ex. 11 ("Smith Depo.") at 34:15-25; 35:10-17.) In this context, this fact alone demonstrates that Smith has no "actual or imminent" risk of being injured at a baseball game. *See Lujan v*, 504 U.S. at 564.

Even if plaintiff Smith were to attend future games at Dodger Stadium, defendants' data demonstrates that her risk of injury is very small at 0.018%. (Gorman Decl. ¶ 12 and Exs. 12-15; Defendants' Supplemental Reply, at 4.) Plaintiffs' argument that, on average, up to two individuals were struck eat each game during the 2015 season at Dodgers' Stadium does not persuade. The relative risk remains small. More importantly, however, the figures plaintiffs cite do not concern the risk of injury that Smith *herself* faces while sitting in Field Box 35, but rather the overall risk of an average attendee. Therefore, assuming that the figures remain relatively constant, the risk that Payne will be injured does not rise to the requisite threshold. *See Clapper*, 133 S. Ct. at 1147.

Finally, plaintiff Smith has also presented evidence that she fears attending baseball games and has declined invitations to do so since her accident. (Smith Depo. at 57:8-58:1.) The fear, while understandable, is not supported by data showing injury to be likely to reoccur, and this is insufficient for standing under Counts 1-5. *See Lyons*, 461 U.S. at 111; *cf. Bowen*, 709 F.3d at 870 n.3 (standing found where fear was "actual and well-founded"). The fact that plaintiff Smith has already been injured by a foul ball before does not increase her risk of injury in future. In fact, her awareness of the risks associated with stadium distractions arguably reduces her risk compared to the average attendee. The Court grants defendants' motion to dismiss these Counts with respect to Smith as well.[5]

---

[5] Counts 1-5, as currently pled, appear to seek only injunctive relief (and, perhaps, attorney's fees and costs related thereto).

9

1    Having dismissed Counts 1-5 with respect to both plaintiffs Payne and Smith on the

2 threshold issue of standing, the Court need not evaluate defendants' other proffered bases for

3 dismissal.[6]

### III.   VENUE

The Court next turns to Count 6, plaintiff Smith's individual personal injury claim based on negligence.  At oral argument, plaintiffs conceded that should the Court dismiss plaintiffs' claims for injunctive relief, as the Court has now done, then the Court would not have jurisdiction over Count 6.  (Dkt. No. 99 at 22:21-25.)  Nevertheless, for the sake of thoroughness, the Court addresses whether venue is proper in the Northern District of California.

### A.  Legal Standard

A defendant may move to dismiss a complaint for improper venue pursuant to Federal

---

[6] The Court notes that while it dismisses plaintiffs' claims, the opinion should not be construed broadly as one suggesting that recovery would be barred in every instance for claims arising from spectator injuries sustained at baseball games.  With regard to plaintiffs' claim for negligence, defendants are correct that California and a majority of states follow the "Baseball Rule," which limits the duty of care that stadium owners and operators owe to spectators.  *See Quinn v. Recreation Park Ass'n*, 3 Cal. 2d 725, 729, 46 P.2d 144, 146 (1935) ("The duty imposed by law is performed when screened seats are provided for as many as may be reasonably expected to call for them on any ordinary occasion . . . ."); *see also, e.g., Arnold v. City of Cedar Rapids*, 443 N.W.2d 332, 333 (Iowa 1989); *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 329, (1981); *Turner v. Mandalay Sports Entm't, LLC*, 124 Nev. 213, 218 (2008). See also *Edling v. Kansas City Baseball & Exhibition Co.*, 181 Mo. App. 327 (1914) (first recognizing the Baseball Rule almost a century ago).  However, the "Baseball Rule," has also been the subject of criticism and some states have rejected it.  For example, in *Rountree v. Boise Baseball, LLC*, 154 Idaho 168 (2013), the Idaho Supreme Court declined to adopt the "Baseball Rule."  There, a man attending a Boise Hawks baseball game with his wife and two grandchildren was struck by a foul ball and, as a result, lost his eye.  He brought suit for negligence against the baseball club, the stadium, and others.  On appeal from the district court's denial of the defendants' motion for summary judgment, the Supreme Court of Idaho held that the Baseball Rule does not apply in Idaho, and that primary assumption of the risk is not a valid defense.  *Id.* at 170, 173 ("[N]o compelling public policy rationale exists for us to . . . adopt the Baseball Rule."); *see also Atlanta Nat. League Baseball Club, Inc. v. F.F.*, 328 Ga. App. 217, 219, (2014) (declining to adopt Baseball Rule where six-year-old girl suffered a skull fracture and brain injuries after being hit with a foul ball).  Thus, it is conceivable that, under the right set of circumstances, a plaintiff could obtain the type of relief that plaintiffs seek here.

Given the changing nature of both the baseball game experience and the injuries at issue, which are far different from those in 1914, what is a "reasonable expectation" on an "ordinary occasion" is not a static concept.

1  Rule of Civil Procedure 12(b)(3).  Once a defendant challenges venue, the plaintiff bears the

2  burden of proving that venue is proper in a particular district.  *See Piedmont Label Co. v. Sun*

3  *Garden Packing Co.,* 598 F.2d 491, 496 (9th Cir. 1979).  To meet this burden and satisfy the

4  venue requirements of 28 U.S.C. § 1391(b), the plaintiff must show that a civil action was brought

5  in a judicial district (1) where any defendant resides, if all defendants are residents of the state in

6  which the district is located; (2) in which a substantial part of the events or omissions giving rise

7  to the claim occurred; or (3) in which any defendant is subject to the court's personal jurisdiction,

8  if there is no district in which the action may otherwise be brought.

9  When a district court considers a motion to dismiss for improper venue, "the allegations in

10 the complaint need not be accepted as true and the Court may consider evidence outside the

11 pleadings." *eBay Inc. v. Digital Point Solutions, Inc.,* 608 F.Supp.2d 1156, 1161 (N.D. Cal. 2009)

12 (citing *Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1137 (9th Cir. 2004)).  If a court finds that

13 venue is improper, it must "dismiss, or if it be in the interest of justice, transfer such case to any

14 district or division in which it could have been brought."  28 U.S.C. § 1406(a).

15 **B. Analysis**

16 Here, plaintiff Smith has not specified against which defendant or defendants she brings

17 her personal injury claim.  As her injury occurred at the Los Angeles Dodgers stadium, the Court

18 analyzes her claim as against the Los Angeles Dodgers.[7]  First, the Los Angeles Dodgers are a

19 resident of the Central District of California, not the Northern District of California.  Therefore,

20 venue is improper here under 28 U.S.C. section 1391(b)(1).  Second, Smith sustained her injury in

21 Los Angeles, which means that no "substantial part of the events or omissions giving rise to the

22 claim occurred" in the Northern District of California.  *See* 28 U.S.C. § 1391(b)(2).  Third,

23 plaintiff may bring her claim in the Central District of California.  *See* 28 U.S.C § 1391(b)(3).

24 Accordingly, the Court dismisses Count 6 on improper venue grounds.

25 //

---

[7] To the extent her claim is also against defendant MLB, plaintiff has presented no evidence that MLB is a resident of California.

11

### IV. LEAVE TO AMEND

Regarding Counts 1-5, the Court has given plaintiffs ample opportunity to demonstrate standing, including by allowing for supplemental discovery and briefing on the issue. Plaintiffs have not met their burden. As the Court finds that further amendment would be futile, leave to amend Counts 1-5 is denied. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

Regarding Count 6, leave to amend is also inappropriate, as plaintiff Smith's injury took place in Los Angeles and venue is proper in the Central District of California, a fact which cannot be changed by amendment.

### V. CONCLUSION

For these reasons, Counts 1-5 are **DISMISSED WITHOUT LEAVE TO AMEND** for lack of standing. Count 6, plaintiff Smith's individual claim for negligence in connection with her personal injury, is **DISMISSED WITHOUT PREJUDICE OR LEAVE TO AMEND** for improper venue.

This Order terminates Docket Numbers 52, 85, 89, and 98.

**IT IS SO ORDERED.**

Dated: November 16, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**